Ahren A. Tiller Esq. [SBN: 250608]
BLC Law Center, APC
1230 Columbia St., Ste 1100
San Diego, CA 92101
Phone (619) 894-8831
Facsimile: (866) 444-7026
Email: Ahren.Tiller@blc-sd.com

Abbas Kazerounian, Esq. [SBN: 249203]
Kazerouni Law Group, APC
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Phone: (800) 400-6808
Facsimile: (800) 520-5523
Email: ak@kazlg.com

[Additional Counsel On Signature Page]

Attorneys for Plaintiff, and all
those Similarly Situated
AILEEN MARQUEZ

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

AILEEN MARQUEZ, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

vs.

WAKPAMNI LAKE COMMUNITY CORPORATION; and WAKPAMNI LAKE COMMUNITY CORPORATION II a/k/a WLCC II d/b/a ARROWHEAD ADVANCE; and RAYCEN AMERICAN HORSE RAINES f/k/a RAYCEN BALLARD; and GENEVA LONE HILL

Defendants.

**Case No.:** '21 CV 0525 WQH KSC

**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**

1. **VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. § 1962);**
2. **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. §§ 227, *et. seq*.);**
3. **VIOLATIONS OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF. C. §§ 17200 *ET. SEQ.*;**
4. **VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CAL. CIV. C. §§ 1788, *et. seq*.)**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. AILEEN MARQUEZ (hereinafter referred to as "Plaintiff"), by and through her Counsel of record, brings this action against WAKPAMNI LAKE COMMUNITY CORPORATION (hereinafter referred to as "WLCC"), and WAKPAMNI LAKE COMMUNITY CORPORATION II a/k/a WLCC II d/b/a ARROWHEAD ADVANCE, (hereinafter referred to as "ARROWHEAD"), and RAYCEN AMERICAN HORSE RAINES f/k/a RAYCEN BALLARD (hereinafter referred to as "RAINES"), and GENEVAL LONE HILL (hereinafter as "HILL") (collectively referred to as "Defendants") for violations of (1) The Racketeer Influenced And Corrupt Organizations Act (18 U.S.C. § 1962); (2) The Telephone Consumer Protection Act (47 U.S.C. §§ 227, *et seq*.); (3) The Unfair Competition Law (Cal. Bus. & Prof. C. §§ 17200 *et. seq.*); and (4) The Rosenthal Fair Debt Collection Practices Act (Cal Civ. C. §§ 1788, *et. seq.*).

2. The Defendants have all engaged in a criminal conspiracy wherein they have acted in concert with one another to issue unlawful and usurious short-term unsecured consumer loans at interest rates in excess of their legal limit, and systematically withdraw payments from consumers' bank accounts without permission to do so.

3. Defendants all have formed sham tribal corporate entities, wherein Defendant WLCC functions as a holding company for multiple subsidiary entities, including Defendant ARROWHEAD. The structure of WLCC and its subsidiaries are part of a "rent a tribe" scheme wherein Defendants all conspired to use the legal status of Native American, Oglala Sioux Tribe ("Tribe") to shield themselves from liability for violating State usury laws.

4. Plaintiff makes the allegations contained herein on information and belief, except as to those allegations regarding herself, which are made based upon her personal knowledge.

5. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and

owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.[1]

6. In 1991, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., in response to complaints about abusive telemarketing practices.

7. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and it made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11.  Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

> *Id*. at § 12.

8. In 2015, the Federal Trade Commission ("FCC") noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).

---

[1] Cal. Civ. Code §§ 1788.1 (a)-(b)

9. The transmission of unsolicited calls and voice messages to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## JURISDICTION AND VENUE

10. This action is based upon Defendants' violations of several federal statutes over which this Court has original jurisdiction, including but not limited to 28 U.S.C. § 1331, as the unlawful violations of The Racketeer Influenced and Corrupt Organizations Act ("RICO") alleged herein involves a federal question.

11. Further, this Court has supplemental jurisdiction over Plaintiff's California causes of action, pursuant to 28 U.S.C. § 1367(a), as Plaintiff's California state law claims are so related to Plaintiff's federal claims in this action, that they form part of the same case or controversy.

12. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1)-(2) and 18 U.S.C. § 1965(a), because all or some of the unlawful practices and violations of law alleged herein occurred and are occurring in the County of San Diego, California. Furthermore, Defendants regularly conduct business within the State of California, County of San Diego and Plaintiff resides in San Diego County, California.

## PARTIES

13. Plaintiff is, and was at all times mentioned herein, a natural person residing in the County of San Diego, in the State of California.

14. Defendant WLCC purports to be a tribal corporation formed under the laws of the Oglala Sioux Tribe.

15. Defendant ARROWHEAD purports to be a wholly-owned subsidiary of Defendant WLCC.

16. Defendant RAINES is a natural person who until 2011 was not a member of the Oglala Sioux Tribe. In 2011, he sought and obtained enrollment in the Oglala Sioux Tribe.

17. On or about 2011, as part of his enrollment in the Oglala Sioux Tribe, Defendant RAINES changed his name from "Raycen Ballard" to "Raycen American Horse Raines."

18. Defendant HILL is a natural person residing in the Pine Ridge Reservation in South Dakota.  Defendant HILL is now, and at all times relevant hereto, was a member of the Olgala Sioux Tribe.

19. Defendants HILL and RAINES formed and operate co-Defendant WLCC and co-Defendant ARROWHEAD.

20. Although Defendants claim to be tribal corporations, they are in fact sham entities used by Defendants as part of a "rent-a-tribe" scheme.

21. Although Defendants all hold out WLCC and ARROWHEAD to be legitimate Tribal corporate entities, in reality, Defendant HILL is a rogue member of the Olgala Sioux Tribe who has acted unilaterally to form WLCC and ARROWHEAD, and engage in the criminal conspiracy described herein without the Tribe's approval or consent.

22. In fact, the Olgala Sioux Tribe's Economic Development Office officially declined to enter into any business agreement with Defendant RAINES. Defendant RAINES and Defendant HILL then formed WLCC and ARROWHEAD purporting them to be tribal entities, when in fact all business operations for WLCC and its subsidiaries occurred and continues to occur in Arizona, and all customer payments are processed through Cash Cloud, LLC, a now-defunct Arizona LLC with no tribal affiliation.

**GENERAL ALLEGATIONS**

23. The allegations herein constitute Plaintiff's most accurate statement of the facts and identities of the individuals, the structure and operation of their enterprise, and each of the individuals' roles in the racketeering enterprise. The facts alleged herein come from Plaintiff's personal knowledge, Plaintiff's research, and Plaintiff's Counsel's investigation and research, taking into account that

Defendants all intentionally obscure and conceal their actions to hide their criminal enterprise.

24. On or about 2011, Defendant RAINES was working as an insurance salesman and realized that forming a short-term high-interest consumer lending business under the laws of a Tribe could potentially provide a "shield" to liability under state consumer protection statutes and other state regulatory enforcement.

25. Defendant RAINES reached out to the Oglala Sioux Tribe and presented his idea to have the Tribe form a tribal corporation that would be a holding company for a consumer payday lending business, whose true operations and place of business would be in Arizona.

26. Ultimately, the Olgala Sioux Tribe's Economic Development Office recommended against Defendant RAINES's proposal, and the Tribe officially declined to participate in RAINES's business venture.

27. Undeterred, Defendant RAINES brought his idea to Defendant HILL, a rogue member of the Oglala Sioux Tribe.

28. Defendant HILL and Defendant RAINES then conspired to form Wakpamni Lake Community Corporation, a tribal corporate entity ("WLCC").  Defendant HILL is and has been at all times relevant hereto, the President of Defendant WLCC, and Defendant RAINES ostensibly holds the title of economic development coordinator.

29. Defendants HILL and RAINES then proposed to bring their business plan to the Wakpamni District, one of nine regional subdivisions that make up the Oglala Sioux Tribal Reservation.

30. On or about January 2012, Defendants HILL and RAINES presented a contractual agreement between WLCC and the Walkpami district board of directors. Tribal law required the board members to approve any such agreement with Defendant WLCC, and after hearing the proposal by Defendant RAINES, all but one board member refused to approve the agreement.

*MARQUEZ v. WLCC II, - Complaint for Damages*

31. The then-president of the Walkpami district board of directors, Sandy Two Lance, then moved to unilaterally sign the agreement ostensibly based upon an informal tally of individuals from the community present at the meeting. This was unlawful under applicable tribal law with Sandy Two Lance stating, "It's not going to be legal, but I'm going to do it and see what happens."

32. The Walkpami district board of directors refused to honor the contract signed by Sandy Two Lance, as it had been entered into illegally. The board of directors informed Defendants RAINES and HILL of this decision, but despite the Tribe's ruling that subject agreement was void, the Defendants continued to operate WLCC and ARROWHEAD as a payday lender unabated.

33. Similarly, the Olgala Sioux Tribe's Revenue Office has informed Defendants that they do not legally have any affiliation with the Olgala Sioux Tribe and have requested Defendants cease falsely stating that they are affiliated with the Olgala Sioux Tribe.

34. Defendants operate WLCC and its subsidiaries, including ARROWHEAD without a tribal sanction, and share no profits or ownership interest with the tribe. As a result, WLCC and its subsidiaries have no legal affiliation with the Oglala Sioux Tribe, and as such, have no sovereign immunity from State civil claims nor State regulatory actions.

35. Defendants falsely claim on their website as follows:

> *WLCC is incorporated under and governed by the laws of the Oglala Sioux Tribe, a federally recognized Indian Tribe, and the regulations of the Wakpamni Lake Community. WLCC operates independently of the Oglala Sioux Tribe. Correspondence should be directed to WLCC. As a tribal government, the Wakpamni Lake Community Corporation is a sovereign corporation and follows all applicable tribal and federal laws. State laws, regulations, and interest rates are not applicable to WLCC II DBA Arrowhead Advance or WLCC.*

36. Defendants use this alleged shield from liability to issue usurious and unlawful loans far in excess of applicable state law statutory regulations.

37. The primary business location where the Defendants' illegal scheme operates is in the state of Arizona, and is operated by non-tribal third parties.

38. Virtually all of the actual lending business and profits go to various corporate entities operating in Arizona under the name "Cash Cloud."

39. Originally, Defendants used Cash Cloud, LLC for the actual business operations, but have since terminated that LLC and operate Cash Cloud, Inc. in Arizona.

40. Defendants additionally have other non-headquarters loan processing locations in Utah, Texas, Canada, and Belize – none of which are affiliated with or conducted by the Olgala Sioux Tribe.

41. Defendant WLCC currently holds multiple subsidiary entities including Defendant ARROWHEAD.  Defendant WLCC additionally owns and operates the following other subsidiary payday lending entities: Green Circle, The Gan Eden Group, First Day Loan, Fox Hills Cash, Rolling Plains Cash, Check Advance USA, Cash on Cloud9, Easy Cash Online Store, Bayside Cash, Fast Money Store, Fireside Cash, Seaside Dollar, and Seaside Payday.

42. In reality, each of these companies is owned and controlled by non-tribal members who reap all of the proceeds from the unlawful loans.

43. Defendants intentionally and falsely advertise that the sub-entities of WLCC are wholly-owned by a tribal government under the law of the Oglala Sioux Tribe, when in reality they are run and controlled by non-tribal members who reap virtually all of the proceeds from the usurious and unlawful loans.

44. Cal. Civ. C. § 22303 prohibits unsecured loans under $2,500.00 that exceed the sum of:

    (a) Two and one–half percent per month on that part of the unpaid principal balance of any loan up to, including, but not in excess of two hundred twenty–five dollars ($225).

(b) Two percent per month on that portion of the unpaid principal balance in excess of two hundred twenty–five dollars ($225) up to, including, but not in excess of nine hundred dollars ($900).

(c) One and one–half percent per month on that part of the unpaid principal balance in excess of nine hundred dollars ($900) up to, including, but not in excess of one thousand six hundred fifty dollars ($1,650).

(d) One percent per month on any remainder of such unpaid balance in excess of one thousand six hundred fifty dollars ($1,650).

45. Defendants, through their illegal scheme, make loans at interest rates ranging from 400% APR to upwards of 800% APR, in violation of Cal. Fin. C. § 22303.

46. Cal. Civ. C. § 1670.5 codified that unconscionable contracts or unconscionable clauses in any contract allow a Court to refuse to enforce the entire contract or any unconscionable portion.

47. On January 3, 2017, Plaintiff took out an unsecured consumer loan with Defendant ARROWHEAD.

48. Defendant ARROWHEAD lent Plaintiff a principal amount of $450.00 at an interest rate of 779.98% APR, in violation of Cal. Fin. C. § 22303.

49. Defendant ARROWHEAD required Plaintiff to repay a minimum of $1,335.73 for the $450.00 loan, in violation of Cal. Fin. C. § 22303.  Plaintiff repaid that amount, incurring actual financial harm as a result of Defendants' unlawful conduct.

50. On July 29, 2020, Plaintiff took out another unsecured consumer loan with Defendant ARROWHEAD.

51. This time Defendant ARROWHEAD lent Plaintiff a principal amount of $400.00 at an interest rate of 624.01% APR, in violation of Cal. Fin. C. § 22303.

52. Defendant ARROWHEAD required Plaintiff to repay a minimum of $1,142.64 for the $400.00 loan, in violation of Cal. Fin. C. § 22303.  Plaintiff repaid portions of the amount owed on this loan, thereby she has suffered injury in fact and has

lost money or property as a result of the Defendants' unfair competition / unlawful business practices.

53. Cal. Fin. C. § 22100 prohibits any person from engaging in the business of a finance lender or broker without obtaining a license from the CA Commissioner of Business Oversight.

54. The loans issued by Defendants are "consumer loans" as that term is defined in Cal Fin. C. § 22203.

55. Pursuant to Cal. Fin. C. § 22001(b) and (c), Cal. Fin. C. § 22303 applies to the loans issued by Defendants.

56. Upon going into default on the second loan, agents and employees of Defendants called Plaintiff multiple times per day to collect on their claim.

57. On at least two (2) occasions, Plaintiff spoke to agents of Defendants by phone and informed them that she had retained an attorney to represent her regarding their claim and instructed them to cease contacting her directly.

58. Plaintiff additionally verbally instructed agents for Defendants not to debit her bank account for any future payments.

59. On December 4, 2020, Plaintiff sent an electronic mail to Defendant ARROWHEAD stating that Plaintiff was filing for bankruptcy and instructed Defendant ARROWHEAD to cancel any further automatic payments or debits on her account.  Plaintiff additionally provided the last 4 digits of her social security number and instructed Defendant ARROWHEAD to send all further communication to her attorney, and provided Defendant ARROWHEAD with her attorney's contact information.

60. On December 4, 2020, an agent for Defendant ARROWHEAD identified only as "Customer Support Team" responded to Plaintiff's email.  In the response, the agent confirmed receipt of Plaintiff's email and stated that they understood that Plaintiff was working with "a third party" to assist her in resolving her account.

61. On December 10, 2020, Plaintiff reiterated by email to Defendant ARROWHEAD that they did not have her permission to debit her account for any future payments, explicitly once again stating that she had revoked any authorization for Defendant ARROWHEAD to withdraw payments from her account.

62. Despite this, on December 11, 2020, Defendant ARROWHEAD unlawfully debited Plaintiff's bank account for $95.21.

63. On December 11, 2020, Plaintiff's legal counsel sent a letter by mail to Defendant ARROWHEAD stating that Plaintiff was represented by counsel with regards to any debt(s) owed to Defendant ARROWHEAD.  The letter provided Plaintiff's name, last four digits of her social security number, and explicitly stated that demand was made pursuant to Cal. Civ. C. §§ 1788.14 and 1788.17 that Defendant ARROWHEAD cease all direct communication with Plaintiff and instead contact Plaintiff's attorney.

64. The December 11, 2020, letter additionally expressly revoked any alleged prior consent to contact Plaintiff via an auto-dialer and stated that it was also a formal request to opt-out of any alleged arbitration agreement applicable to Plaintiff.

65. Despite receipt of the December 11, 2020 letter, and Plaintiff's own verbal and written email instructions, agents for Defendants have continued to call Plaintiff multiple times per day for months, often calling in rapid succession without Plaintiff's consent.

66. Defendants' unlawful debit and unlawful collection practices initiated against Plaintiff are representative of the acts Defendants regularly and frequently commit against all other members of the proposed class.

## CLASS ALLEGATIONS

67. Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

68. Plaintiff is representative of the ongoing and repeated acts of Defendants' criminal enterprise.

69. Defendants, in the 48 months preceding the filing of this Complaint, through their criminal enterprise, have conspired to issue usurious and unlawful loans tens of thousands of times.

70. Plaintiff and the members of the Class have all suffered an injury in fact as a result of the Defendant's unlawful conduct

71. The "Class Period" means 48 months prior to the filing of the Complaint in this action.

72. Plaintiff brings this lawsuit on behalf of herself and other similarly situated individuals under Rule 23(b)(1), 23(b)(2), and (b)(3) of the Federal Rules of Civil Procedures.

73. Subject to additional information obtained through further investigation and/or discovery, the proposed class ("APR Class") consists of:

> All persons in the United States of America who obtained a loan from Defendant ARROWHEAD within the 48 months preceding the filing of this Complaint, wherein the annual percentage rate (APR) of interest on said loan exceeded 90% percent.

74. Additionally, the proposed TCPA Class ("TCPA Class") consists of:

> All persons throughout the United States (1) to whom Defendants delivered or caused to be delivered, a loyalty text message, (2) directed to a number assigned to a cellular telephone service, (3) using the same equipment used to contact Plaintiff or with an artificial or prerecorded voice, (4) within four years preceding the date of this Complaint.

75. Additionally, the proposed California APR Sub-Class ("APR Sub-Class") consists of:

> All persons in the State of California who obtained a loan from Defendant ARROWHEAD  within the 48 months preceding the filing of this Complaint, wherein the annual percentage rate (APR) of interest on said loans exceeded

36% percent.

76. Additionally, the proposed California UCL Sub-Class ("UCL Sub-Class")

consists of:

> All persons in the State of California who obtained a loan from Defendant ARROWHEAD within the 48 months preceding the filing of this Complaint, wherein the annual percentage rate (APR) of interest on said loans exceeded 36% percent.

77. Further, the proposed California RFDCPA Sub-Class ("RFDCPA Sub-Class")

consists of:

> (i) All persons with addresses within the State of California; (ii) from whom Defendants or their agents (iii) collected or sought to collect on a consumer debt (iv) within one year prior to the filing of this Complaint.

78. The proposed Class and Sub-Classes are collectively sometimes referred to as the "Classes".

79. Class certification requirements are met as follows:

   **A.** *Ascertainability*.  The members of the Class are readily ascertainable from Defendants' records of loans issued within the relevant time period, and the specific terms and parties identified therein.

   **B.** *Numerosity*.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff and all those similarly situated are informed and believe, and on that basis allege, that the proposed Classes consists of tens of thousands of members or more.

   **C.** *Existence and Predominance of Common Questions of Law and Fact*. Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual Class Members.  All members of the Classes have been subject to the same conduct and their claims are based on the widespread dissemination of the unlawful, deceptive, and

pernicious conduct by Defendant.  The common legal and factual questions include, but are not limited to, the following:

    i.   the nature, scope, and operations of the wrongful practices of Defendants;

    ii.  whether Defendants engaged in a course of unfair, unlawful, fraudulent and/or pernicious conduct in its lending and loan practices.

    iii.  whether Defendants knew or should have known that its business practices were unfair, and/or unlawful;

    iv.  whether Defendants owed a duty of care to Plaintiff and the Classes;

    v.  whether Defendants' loan products' interest rates were so high that they were unreasonable and/or violated California law and/or public policy.

    vi.  Whether Defendants conspired together in an unlawful criminal enterprise;

    vii.  whether Defendants harmed Plaintiff and the Classes; and

    viii.  whether Defendants were unjustly enriched by its unlawful and unfair business practices.

**D. *Typicality***.  Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiffs are members of the Classes that Plaintiff seeks to represent.  Plaintiff, like members of the proposed Classes, was induced by Defendant ARROWHEAD to take out a loan with unfair, unlawful, and objectively oppressive terms.

**E. *Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Classes.  Plaintiff has retained counsel experienced in consumer protection law, including class actions.  Plaintiff has no adverse or antagonistic interests to those of the Classes, and will fairly and adequately protect the interests of the Classes.  Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Classes.

**F. *Superiority***.  A class action is superior to all other available means for the fair

and efficient adjudication of this controversy.  Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the Courts and the issues raised by this action. The damages or other financial detriment suffered by individual Class and Sub-Class Members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against the Defendant.  The injury suffered by each individual member of the proposed class is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the proposed Classes to individually redress effectively the wrongs to them.  Even if the members of the proposed Classes could afford such litigation, the Court system could not.  Individualized litigation increases the delay and expense to all parties, and the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, the economy of scale, and comprehensive supervision by a single court.

Therefore, a class action is maintainable pursuant to Fed. R. Civ. P. 23(b)(3).

80. Unless the Class and/or Sub-Classes are certified, Defendants will continue their unlawful, unfair, and predatory lending practices as described herein.  If the Class and/or Sub-Classes are certified, the harms to the public and the Classes can be easily prevented or rectified.

81. Furthermore, Defendants have acted or refused to act on grounds that are generally applicable to the Classes so that declaratory and injunctive relief is appropriate to the Class as a whole, making class certification appropriate pursuant to Fed R. Civ. P. 23(b)(2).

**I.**

# FIRST CAUSE OF ACTION

## VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### (18 U.S.C. § 1962)

82. Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

83. Defendants RAINES and HILL are individuals and persons as defined by 18 U.S.C. § 1961(3) and within the meaning of 18 U.S.C. § 1962(c).

84. Defendants WLCC and ARROWHEAD are corporate entities and persons as defined by 18 U.S.C. § 1961(3) and within the meaning of 18 U.S.C. § 1962(c).

85. 18 U.S.C. §1961(6) defines an "unlawful debt" as any debt which is unenforceable under State or Federal law in whole or in part as to principal or interest, because of the laws relating to usury and was incurred in connection with the business of lending money at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

86. 18 U.S.C. § 1962(a) includes as a prohibited activity any person who receives income derived directly or indirectly from a pattern of racketeering activity, or through collection of an unlawful debt…"

87. 18 U.S.C. § 1962(c) prohibits any person associated with any enterprise from conducting, participating directly or indirectly, in the conduct of the enterprise's affairs through collection of unlawful debt.

88. As described in detail herein, Defendants RAINES, HILL, WLCC, and ARROWHEAD, are a group of individuals associated in fact, although they are not a single legal entity.  Together, they work toward a common goal of operating a business that issues consumer loans, as well as collectively work as an enterprise to achieve their common goal of misleading the public and issuing usurious consumer loans that violate applicable lending laws.

89. As described in detail herein, Defendants RAINES, HILL, WLCC, and ARROWHEAD are part of an enterprise that conspires together to lend money at usurious interest rates that exceed twice the rate prohibited by California usury laws, as well as every other State's within the United States' lending laws.

90. Through the conduct described in detail herein, Defendants all, have caused actual harm to Plaintiff and all those similarly situated by their violations of 18 U.S.C. § 1962(c).

## II.

### SECOND CAUSE OF ACTION

### Violations of the Telephone Consumer Protection Act ("TCPA")

### (47 U.S.C. § 227, *et seq*.)

91. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

92. Through the letter from Plaintiff's counsel, and orally, Plaintiff and Plaintiff's counsel revoked any alleged consent for Defendants or their agents or representatives to call Plaintiff on her cellular telephone via the use of an automatic telephone dialing system ("ATDS") and/or artificial or prerecorded voice message.

93. Upon information and belief this telephone dialing equipment used by Defendants, or their agents, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

94. Upon information and belief, this telephone dialing equipment also has the capacity to dial telephone numbers stored in a database or as a list, without human intervention.

95. After revoking any consent to be contacted on Plaintiff's cellular telephone, Defendants or their agents continued to Plaintiff for several months, often multiple times a day in rapid succession.

96. The foregoing acts of Defendants or their agents constitutes numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

97. As a result of Defendants' negligent violations of 47 U.S.C. § 227, *et. seq.*, Plaintiff is entitled to an award of $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

98. As a result of Defendants' knowing or willful violations of 47 U.S.C. § 227, *et. seq.*, Plaintiff is entitled to an award of $1,500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

99. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

### III.

### THIRD CAUSE OF ACTION

### FOR VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW

### (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)

100. Plaintiff realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

101. Plaintiff and Defendants are each "person(s)" as that term is defined by Cal. Bus. & Prof. C. § 17201. Cal. Bus & Prof. C. § 17204 authorizes a private right of action on both an individual and representative basis.

102. Cal. Bus. & Prof. C. § 17204, a provision of the Unfair Competition Law (B & P C §§ 17200–17209), confers standing to prosecute actions for relief not only on the public officials named therein but on private individuals, i.e., "any person acting for the interests of itself, its members or the general public." Thus, a private plaintiff who has suffered a financial injury may sue to obtain relief for others.

103. "Unfair competition" is defined by Bus. & Prof. Code § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful"

business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

## A. *"Unlawful" Prong*

104. By knowingly and intentionally issuing loans at interest rates that are unconscionable, and objectively unreasonable, Defendants have routinely engaged in unlawful business practices.

105. The lending practices described herein by Defendants violate Cal. Fin. C. § 22303.

106. Because Defendants' illegal scheme entailed violations of both Cal. Fin. C. § 22303, Defendants violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq*., which provides a cause of action for an "unlawful" business act or practice perpetrated on consumers.

107. Defendants violated Cal. Bus. & Prof. Code §§17200, *et. seq.* through unfair, unlawful, and deceptive business practices.

108. Cal. Bus. & Prof. Code §§ 17200 *et seq*., provides for private cause of action for an "unlawful" business acts or practices perpetrated on consumers.

109. Defendants had other reasonably available alternatives to further any legitimate business interests, other than the conduct described herein, such as continuing their unlawful conspiracy to provide loans to consumers at unlawful and usurious interest rates and avoid regulatory oversight.

110. Plaintiff suffered an actual monetary financial injury in that her payments made to Defendants were for amounts much higher than they would have been, but for Defendants' unlawful usurious interest rates charged to Plaintiff.

111.    Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices, as such conduct is ongoing and continues to this date.

## B. *"Unfair" Prong*

112.    Defendants' actions and representations constitute an "unfair" business act or practice under § 17200 *et. seq.* in that Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

113.    Without limitation, the business practices describe herein are "unfair" and shock the conscience, because they offend established public policy, violate California statutory protections, and are objectively immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers in that Defendants' conduct caused Plaintiff and the Class Members to incur debts possessing an unlawfully charged interest rate.

114.    At a date presently unknown to Plaintiff, but at least four years prior to the filing of this action, and as set forth above, Defendants committed acts of unfair competition as defined by Cal. Bus. & Prof. Code §§ 17200, *et seq.*, as described herein.

115.    Defendants could and should have furthered their legitimate business interests by not perpetrating fraud on the entire representative class of California borrowers by charging usurious interest rate(s).

116.    Plaintiff and other members of the Class could not have reasonably avoided the injury suffered by each of them.

117.    Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

118.    Plaintiff, and all those similarly situated, seek via the powers granted to Plaintiff pursuant to Cal. Bus. Prof. C. § 17204 to act a Private Attorney General and seek public injunctive relief to benefit the general public directly by bringing an end to Defendants' unfair business practices, which threaten future injury to the general public via continuing to advertise and issue loans with unconscionably high unlawful interest rates.

119.    Specifically, Plaintiff seeks this Court grant an injunction requiring Defendants immediately cease entering into loan agreements with an APR in excess of those proscribed in Cal. Fin. C. § 22303, as well as enjoin Defendants from holding themselves out as a "sovereign tribal corporation" that is immune from state regulatory laws.  Such an injunction would benefit the public at large, because the public could then not be charged illegal and usurious interest rates by Defendants, nor fooled into believing they were having a loan issued by a legitimate tribal sanctioned entity.

## IV.

## FOURTH CAUSE OF ACTION

**Violations of the Rosenthal Fair Debt Collections Practices Act ("RFDCPA")**

**(Cal. Civ. C. § 1788.17 & 15 U.S.C. § 1692e(2)(A))**

120.    California Civil Code (Cal. Civ. Code) § 1788.17 provides in pertinent part that, "…every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code."

121.    Plaintiff is a natural person who resides in the State of California, from whom a debt collector collected and/or sought to collect a consumer debt which was alleged to be due and owing from Plaintiff, and is a "debtor" as that term is defined by California Civil Code § 1788.2(h).

122. Plaintiff is informed and believes, and thereon alleges, that Defendants, in the ordinary course of business, regularly, on behalf of themselves, engage in debt collection as that term is defined by California Civil Code § 1788.2(b), and is therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c), including but not limited to preforming unauthorized debits of consumer's bank accounts on high interest consumer loans.

123. The alleged financial obligations of Plaintiff on the loans were money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another person and are therefore a "debt" as that term is defined by California Civil Code § 1788.2(d), and a "consumer debt" as that term is defined by California Civil Code § 1788.2(f).

124. 15 U.S.C. § 1682e(2)(A) states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:… (2) The false representation of—(A) the character, amount, or legal status of any debt;…"

125. Defendants collected, and sought to collect, an alleged consumer debt from Plaintiff and the RFDCPA Sub-Class despite Defendants' false representations concerning the legal status of the alleged debt, as Plaintiff and the RFDCPA Sub-Class do not owe the alleged debts because they constitute an "unlawful debt" pursuant to 18 U.S.C. §1961(6) and the excessive APR charged by Defendants on the loans is against California public policy.

126. Also, Defendants debited the Plaintiff's bank account in the amount of $95.21 despite the Plaintiff having revoked preauthorization to the electronic funds transfer, thereby violating 15 U.S.C. § 1692f by engaging in unfair or unconscionable means to collect or attempt to collect the alleged debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17. Thus, Defendants have also violated Cal. Civ. Code § 1788.17.

127. As a result of each and every violation of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff having set forth the claims for relief against Defendants, and each of them, respectfully request this Court enter a Judgment against Defendants as follows:

a.  That this action be certified as a Class Action, Plaintiff be appointed as the representatives of the Classes, and Plaintiff's attorneys be appointed Class counsel;

b.  For all monetary gains, profits, and advantages for Defendants' acts of racketeering in violation of 18 U.S.C. §§ 1962 *et. seq.*;

c.  For all actual damages to Plaintiff and all those similarly situated as a result of Defendants' unlawful conduct described herein;

d.  For treble damages pursuant to 18 U.S.C. § 1964(c);

e.  That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the consumer protection statutory claims asserted herein;

f.  Public injunctive relief through the role as a Private Attorney General, pursuant to Cal. Bus. & Prof. Code §§ 17203 & 17204, permanently and immediately prohibiting Defendants from engaging in the unlawful conduct alleged herein, including but not limited to the inclusion in its loan agreements any provision having the effect of imposing an APR of over 36% on loans of more than $2,500, and 30% for loans from $250 - $2,500, and for Defendants to comply with corrective advertising regarding it's tribal status and legality of its interest rates;

g.  A temporary, preliminary and/or permanent order for injunctive relief requiring Defendants to: (i) cease charging an unlawful interest rates on their loans; (ii) and

institute corrective advertising and providing written notice to the public of the unlawfully charged interest rate on prior issued loans;

h. An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and, also, to restore to Plaintiff and members of the Classes all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;

i. Distribution of any monies recovered on behalf of members of the Classes via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;

j. An award of statutory damages under the TCPA, and injunctive relief prohibiting further violations pursuant to 47 U.S.C. § 227(b)(3);

k. Actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for each knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b) to Plaintiff and the RFDCPA Sub-Class; and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from Defendants;

l. Reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5, Cal. Civ. Code § 1780, the UCL, and the common fund doctrine; and,

m. Prejudgment and post judgment interest;

n. For such other and further relief as the Court may deem just and proper.

Dated:  March 25, 2021          By:    */s/ Ahren A. Tiller*_____
                                                    Ahren A. Tiller, Esq.
                                                    BLC Law Center, APC
                                                    Attorneys for Plaintiff
                                                    AILEEN MARQUEZ
                                                    and all those similarly
                                                    situated.

# DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to and demands a trial by jury on all issues triable by jury.

Dated: March 25, 2021       By:    */s/ Ahren A. Tiller*
                                             Ahren A. Tiller, Esq.
                                             BLC Law Center, APC
                                             Attorneys for Plaintiff
                                             AILEEN MARQUEZ
                                             and all those similarly situated.

## Additional Plaintiff's Counsel

Kazerouni Law Group, APC
Jason A. Ibey (SBN: 284607)
321 N Mall Drive, Suite R108
St. George, Utah 84790
Phone: 800-400-6808
Fax: 800-520-5523